UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOROTHY GOMEZ,
        Plaintiff,                            Case No. 04-CV-73995

                                                  District Judge Nancy G. Edmunds
v.                                          Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,
        Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Dorothy E. Gomez brings this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of Defendant Commissioner denying her application for Social Security Disability Insurance Benefits and Supplemental Security Income payments. Before the Court is the Plaintiff's Motion for Remand and Defendant's Motion for Summary Judgment, which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be denied, Plaintiff's Motion for Remand be granted, and that the case be remanded for further administrative proceedings.

**I.  PROCEDURAL HISTORY**

Plaintiff Dorothy E. Gomez applied for Disability Insurance Benefits (DIB) on October 3, 2001 (Tr. 43), and Supplemental Security Income (SSI) on July 12, 2002 (Tr. 197-199). The claims were denied initially and on reconsideration. Plaintiff filed timely

a request for a hearing before an Administrative Law Judge (ALJ) (Tr. 34). A hearing before ALJ Bennett S. Engelman occurred January 13, 2004 (Tr. 21-235). Plaintiff was represented by counsel and testified, as did a Vocational Expert (VE).  On May 7, 2004, the ALJ issued a decision that Ms. Gomez was not disabled and was therefore eligible neither for DIB nor for SSI (Tr. 16-23)  The Appeals Council denied review on September 10, 2004 (Tr. 5-7).  Having exhausted her administrative remedies, Ms. Gomez filed a Complaint in this Court on October 28, 2004.

## II. FACTS

### A.  Plaintiff's Testimony

Ms. Gomez was born April 14, 1965, and was 38 years old at the time of the administrative hearing.  Ms. Gomez testified that she completed the eleventh grade and obtained a GED (Tr. 214).  Over the years, her primary course of employment has been in the janitorial and housekeeping arena (Tr. 216-218).  At the time of onset of her alleged disability, Ms. Gomez was working at an apartment complex.  Her job entailed showing apartments to prospective tenants, completing relevant lease paperwork, and cleaning apartments.

Ms. Gomez alleges that she injured her left knee while cleaning an apartment in the course of her employment and became unable to work on July 9, 2001 (Tr. 43).  Ms. Gomez testified at her hearing that since the date of injury, she suffers from near-constant pain, difficulty walking, insomnia, frequent swelling, and muscle spasms (Tr. 219-221).  She further posited that she has been prescribed various medications for pain and

insomnia, none of which provided a lasting reprieve from her symptoms (Tr. 220-221). Ms. Gomez related that as a result of her injury, she has given up social activities such as bowling and going to the movies (Tr. 229). Ms. Gomez stated that her left knee is deteriorating and her condition is worsening (Tr. 219).

### B. Medical Evidence

Plaintiff has seen several physicians since the onset of injury. On July 10, 2001, Plaintiff began treatment with Byron C. Pflaum II, D.O. During this initial visit, Dr. Pflaum prescribed Piroxicam for the pain and discussed with the Plaintiff the possibility of an MRI if her symptoms had not abated before the three-week follow-up visit (Tr. 129).

Plaintiff followed up with Dr. Pflaum on July 14, 2001. Her pain had not abated. Dr. Pflaum recommended an MRI "to ascertain the etiology of her pain". Dr. Pflaum also prescribed Dolobid for the pain (Tr. 130).

An MRI was conducted on August 12, 2001. The examination report concluded that Ms. Gomez' left knee had a "small joint effusion...felt to represent a tear of the anterior cruciate ligament and degree of meniscoid degeneration of the posterior horn of the medial meniscus" (Tr. 131). Based on the findings from the MRI and the "chronicity of [Gomez'] symptoms," Dr. Pflaum recommended either arthroscopy, which would be a more aggressive form of treatment, or corticosteroid injection, a more conservative form of treatment. Plaintiff opted for the former (Tr. 132).

Dr. Pflaum referred Plaintiff to Jeffrey T. Waldrop, M.D. for the arthroscopic

procedure. Dr. Waldrop saw Plaintiff on September 5, 2001. His impression from that visit was "probable left knee medial meniscal tear versus medial compartment arthritis." Dr. Waldrop concurred with Dr. Pflaum's recommendation of arthroscopic surgery (Tr. 133).

Dr. Waldrop conducted arthroscopic surgery on Plaintiff on September 20, 2001 (Tr. 157-158). Upon completion, Dr. Waldrop concluded that Ms. Gomez had medial compartment arthritis on the left knee (Tr. 135).

On December 26, 2001, Ms. Gomez again saw Dr. Pflaum, who stated, "[Ms. Gomez] has been seen by Dr. Waldrop...he found a large erosion over her medial femoral condyle...[he] offered her Hyalgan type treatments. She presents for the same." Dr. Pflaum agreed with Dr. Waldrop's suggestion for Hyalgan treatments and further suggested the possibility of OATS[1] and Gynzyme procedures (Tr. 136).

Also during the December 26, 2001 visit, Dr. Pflaum noted Plaintiff's knee had atrophied and she suffered a decreased range of motion. He concluded that, "from the patient's history, I find the job injury occurred. At this point in time, the possibility of permanent disability does exist, although certainly I would expect us to continue to attempt to treat any problems at the present time as it stands for at least six months" (Tr. 137).

---

[1]Acronym for Osteoarticular Transfer System procedure, which entails surgically repairing articular cartilage defects with hylane cartilage (Tr. 210, citing Sports Medicine and Orthopaedic Center's website).

On February 6, 2002, Dr. Pflaum noted that despite the Hyalgan injections, Ms. Gomez' symptoms had not improved. He further noted that Ms. Gomez seemed to be having an allergic reaction to corticosteroid injections. He stated that he had run the full gamut of treatments available, and referred her to Dr. DeClaire about a possible OATS and Genzyme procedures. Dr. Pflaum noted, "At this time I find her totally disabled" (Tr. 140).

Jeffrey H. DeClaire, M.D., began seeing the Plaintiff on April 4, 2002. Dr. DeClaire noted that Ms. Gomez may benefit from a repeat arthroscopy to determine if she is a candidate for autologous cartilage reimplantation (Tr. 177). Ms. Gomez agreed to this procedure, but apparently insurance refused to cover it (Tr. 172). Ms. Gomez then returned to Dr. Pflaum for re-evaluation of her pain on July 17, 2002 (Tr. 172).

On October 23, 2003, Ms. Gomez presented at Matrix Pain Management, P.C., and was seen by Michael D. Papenfuse, D.O. Dr. Papenfuse diagnosed Plaintiff as having chronic left knee pain secondary to probable chronic regional pain syndrome 1. Dr. Papenfuse recommended a series of left lumbar sympathetic blocks for treatment of Plaintiff's pain (Tr. 194-195).

### C. The VE's Testimony

VE Judith Findora testified that Plaintiff's past work as a leasing agent at the apartment complex was sedentary and semi-skilled (Tr. 230). The ALJ presented the VE with two hypotheticals. The first hypothetical assumed "a 38-year-old Claimant, with a GED, past work history described, limited to light work, with additional limitations as

follows. Limited walking...ability to sit or stand during the workday." To that hypothetical, the VE responded that Plaintiff's past work as a leasing agent would fit those criteria.

>   The ALJ then added the following variables:

>   ALJ: Let's assume that as a result of an injury or pain to the knee, as she described, it's necessary at unpredictable times during the workday to elevate that leg at least hip level for at least 15 minutes and put ice on it and be away from the workstation. And that can be anywhere from one to multiple times during the workday. How would you analyze that in terms of ability to perform work?

>   VE: That would preclude work.

>   ALJ: Unless she was able to do it on normal breaks?

>   VE: Correct.

>   ALJ: But if it's unpredictable and she has to be away from the workstation that she can't–no–can't be competitively employed?

>   VE: Correct (Tr. 232-233).

### D.  The ALJ's Decision

In his written decision dated May 7, 2004, the ALJ found that the Plaintiff's left knee pain was a "severe" impairment, but not severe enough to meet or equal the Listing of Impairments found at Appendix 1 to 20 C.F.R. Part 220. The ALJ further found that the claimaint's allegations regarding her pain and limitations were not credible. The ALJ assigned Plaintiff a residual functional capacity (RFC) of "light work that does not require lifting over 20 pounds occasionally or 10 pounds frequently. This work must offer a sit/stand option with limited amounts of walking. Due to pain, the claimant has

mild concentration deficits" (Tr. 22). The ALJ concluded, therefore, that the Plaintiff's left knee pain did not prevent her from performing her past relevant work as an apartment rental clerk/leasing agent (Tr. 22).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less than a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed.2d 842 (1971) ( quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S.Ct. 206, 83 L.Ed. 126 (1938)).  The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health and Human Services,* 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services,* 884 F.2d 241,245 (6th Cir. 1989).

### IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423 (d)(1)(A).  In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962,964 (6th Cir. 1984).

## V.  ANALYSIS

Plaintiff raises a single issue before this Court: that the ALJ failed to address in his decision a substantial number of medical records of treating physicians, including all recent medical records and opinions of treating physicians supporting a finding of disability.  I agree[2]. Remand is necessary because the ALJ failed to adhere to his own

---

[2]In her Brief in Support of Appeal to the Appeals Council, Plaintiff attached records of Brian deBeaubian, M.D., which, according to Plaintiff, only became available

agency's regulations, namely, the requirement to "give good reasons" for disregarding the opinions of treating sources in a disability benefits context.  20 C.F.R. §404.1527(d)(2)(2004).

Generally, "an ALJ must give the opinion of a treating physician controlling weight in a social security benefits case if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record." *Wilson v. Commissioner of Social Security,* 378 F.3d 541,544 (6th Cir. 2004) (quoting 20 C.F.R. §404.1527(d)(2)).  If the ALJ decides not to accept the opinion of the treating physician(s), he must present a "reasoned basis" for doing so, *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2004), and must consider certain factors, specifically, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source."  *Wilson,* 378 F.3d at 544.

The ALJ's rejection of a treating physician's opinion must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  Soc. Sec. Rul. 96-2p, WL 374188, at *5 (1996). The *Wilson* court pointed out that meaningful review is only

---

after the hearing date.  Because this Court is only determining whether the ALJ properly handled evidence given at or before the hearing, the records of Dr. deBeaubian will not be considered.

possible if a reasoned basis is given for an ALJ's decision. *Id.* citing *Halloran v. Barnhart,* 362 F.3d 28, 32-33 (2nd Cir. 2004); *see generally SEC v. Chenery Corp.,* 332 U.S. 194, 196-197, 67 S.Ct. 1760 (1947) (outlining principles of review of administrative decisions). In addition, "'[t]he requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases,' particularly in situations where a claimant knows that her physician has deemed her disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Wilson,* 378 F.3d at 544, quoting *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999).

Without deciding the issue, *Wilson* suggested that a *de minimus* violation of the treating physician rule *might* qualify as harmless error. *Wilson,* 378 F.3d at 547. This harmless error exception has not been unequivocally defined in current case law. It cannot, however, mean that the claimant "'appears to have had little chance of success on the merits anyway.'" *Id.* at 546, quoting *Mazaleski v. Treusdell,* 562 F. 2d 701, 719 n. 41 (D.C. Cir. 1977). Rather, the *Wilson* court suggested circumstances that "may not warrant reversal": (1) if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of §1527(d)(2)–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation. *Id.* at 547. *See also Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 536 (6th Cir. 2001) (holding that

ALJ's adoption of treating source's opinion constituted harmless error).

Evaluated against these principles, the ALJ's decision is insufficient. Dr. Pflaum has treated the Plaintiff for her knee pain since its onset; he was, therefore, in an ideal position to offer the opinion that Ms. Gomez was disabled as a result of her impairments. The ALJ ultimately decided to reject this opinion of Dr. Pflaum. This was not in itself error. The issue of whether Plaintiff is able to work is ultimately a decision for the Commissioner, not a doctor. 20 C.F.R. §404.1527(e)(1); *Kapusta v. Sullivan,* 900 F.2d 94, 97 (7th Cir. 1989)(the final decision on whether a claimant is disabled is a legal question, not a medical one).

Nevertheless, it was error for the ALJ not to address Dr. Pflaum's underlying medical findings supporting his opinion of disability. Dr. Pflaum's opinions were well-supported and consistent with his clinical findings. As Dr. Pflaum's clinical findings and opinions were based on years of evaluation and an established relationship with Ms Gomez, they were not so "patently deficient" that no one could possibly give credence to them. *Wilson,* 378 F.3d at 547. Given SSR 96-2p, the ALJ was required to address Dr. Pflaum's opinions. 1996 WL 374188, at *2.

The ALJ did not do this. In fact, the ALJ never addressed several of Dr. Pflaum's findings that indicated disability. The ALJ did discuss three (3) visits Ms. Gomez made to Dr. Pflaum. The first two visits discussed were in 2001 prior to Ms. Gomez' MRI. The third visit discussed was in July 2002. The ALJ stated that during the July 2002 visit, "[Dr. Pflaum] noted that claimant was wearing a brace and she described pain at the

-11-

medial aspect of her left knee. However, she had no hypesthesia, paresthesia, paresis, or paralysis in her lower left extremity...she showed full neurocirculatory status and range of motion...her ligaments were stable and anterior and posterior drawer signs were *negative*" (Tr. 20, ALJ's emphasis).  Nevertheless, the ALJ failed to address the December 2001 visit when Dr. Pflaum opined on the possibility of permanent disability and the February 2002 visit when he concluded that Ms. Gomez was unable to work because of her injury (Tr. 137-140).  Furthermore, the ALJ did not address the findings from the MRI, or how Dr. Pflaum exhausted all treatment options available in an attempt to provide Ms. Gomez reprieve from her near-constant pain. Given Dr. Pflaum's longstanding familiarity with Plaintiff's ailments, the ALJ should have addressed these clinical findings.  Because the ALJ adopted a finding inconsistent with this treating physician's opinions, it must be inferred that the ALJ largely rejected those opinions.  The ALJ's opinion, however, does not "'make clear'" why he assigned these opinions so little weight. *Wilson,* 378 F.3d at 544 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5).  The ALJ's failure to address these crucial facts denies the Plaintiff and subsequent reviewers of the ALJ's decision an understanding of the weight ascribed to the treating source's medical opinions and why. *Ibid.*  Curiously, the ALJ gave no justification as to why he accepted Dr. Pflaum's findings in some matters but implicitly rejected any finding that would indicate that Ms. Gomez was disabled.  The ALJ, therefore, erred in his decision by not addressing Dr. Pflaum's opinions indicating disability and clinical findings that supported a finding of disability.

The ALJ also erred in failing to fully address the opinions of Ms. Gomez' other treating physicians. The ALJ made reference to Dr. Waldrop's findings from arthroscopic surgery, stating:

> [Ms.Gomez had] no evidence of any chondromalacial changes related to her patellofemoral joint. She had *no* evidence of any loose bodies. She had changes related over the weight bearing surface of the medial femoral condyle, but no evidence of any meniscal pathology. Her anterior and posterior cruciate ligaments were totally intact and she had no sign of any injury. Her articular cartilage over the lateral femoral condyle as well as the lateral tibial plateau was in excellent condition. (Tr. 19, ALJ's emphasis)

The ALJ, however, neglected to relate Dr. Waldrop's final conclusions from the exploratory surgery: that Ms. Gomez suffered from medial compartment arthritis on the left knee (Tr. 135), and that "the patient had obvious changes down to bone related to the medial compartment" (Tr. 157). Again, it is peculiar that the ALJ accepted Dr. Waldrop's ancillary findings but ignored his final diagnosis.

The ALJ failed to fully address the findings of Dr. DeClaire. The ALJ mentions Dr. DeClaire in passing, only to note that he recommended a repeat arthroscopic surgery that was later cancelled due to insurance constraints (Tr. 19). The medical evidence indicates, however, that Dr. DeClaire also noted on examination that Plaintiff "walks with significant antalgic gait, stiff legged without bend; extreme atrophy of her quadriceps; limitation of motion; lateral tilt of the patella and is exquisitely tender involving her patella and quadriceps tendon, and tenderness to the medial joint line and the medial femoral condyle" (Tr. 177).

The ALJ also failed to even mention Dr. Papenfuse and Dr. Lingenfelter, who treated Ms. Gomez for pain (Tr. 180-195).

The ALJ inadequately dealt with every treating physician by either failing to address key clinical findings or by glossing over the physician's final conclusion. In doing so, he managed to completely miss the point of every treating physician's finding. An ALJ must consider the evidence as a whole and he must refrain from a 'selective reading' of the record. *Laskowski v. Apfel,* 100 F. Supp. 2d 474, 482 (E.D. Mich. 2000). The ALJ cannot discuss only selective evidence unfavorable to claimant, or give more weight to certain evidence without stating why it is more credible. *Ibid.,* citing *Garner v. Heckler,* 745 F.2d 383, 38 (6th Cir. 1984). Therefore, the ALJ had a duty to fully examine and discuss the opinions of all treating physicians in the record, even if he ultimately decided to disregard certain opinions and adopt others.

The ALJ's failure to directly address the opinions of Ms. Gomez' treating physicians was not harmless error. *Wilson,* 378 F. 3d at 547 (leaving open the possibility of harmless error when an ALJ does not address a treating source opinion). An ALJ has a duty, despite an onerous case load, to fully explain the reasons for his decision. *Ibid.,* 378 F.3d at 544; 20 C.F.R. §404.1527(d)(2). The Plaintiff and subsequent reviewers ought to be able to logically trace the ALJ's line of reasoning through to his conclusion. Here, the ALJ's decision is bereft of *any* reason supporting his implicit rejection of the medical opinions and findings of plaintiff's treating physicians. As such, the goal of the "procedural safeguard of reasons" provision of *Wilson* has not been met. The ALJ's

omissions, therefore, cannot be described as harmless error.

Based on the ALJ's errors in this case, a remand should be granted for further administrative proceedings and findings.

### VI. CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be DENIED, Plaintiff Motion for Remand be GRANTED, and the case REMANDED for further administrative proceedings consistent with this Report and Recommendation.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1 (d)(2). Failure to file specific objections constitutes a waiver of any further right to appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 46, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local* 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1 (d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response should not be more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The

response shall address specifically, and in the same order raised, each issue contained within the objections.

            S/R. Steven Whalen
            R. STEVEN WHALEN
            UNITED STATES MAGISTRATE JUDGE

Dated: November 16, 2005

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 16, 2005.

            S/Susan Jefferson
            Case Manager